# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCE PAUL RAYMOND WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>J. VISTA, et al.,<br><br>Defendants. | Case No. 1:21-cv-01661-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM AND DISMISSING ACTION FOR FAILURE TO COMPLY WITH COURT ORDER AND FAILURE TO PROSECUTE<br><br>(ECF Nos. 1, 12)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Prince Paul Raymond Williams ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On February 18, 2022, the Court issued a screening order finding that Plaintiff had failed to state any cognizable claims in his complaint, and granted Plaintiff thirty (30) days in which to file a first amended complaint. (ECF No. 12.) More than thirty (30) days have passed and Plaintiff has neither filed an amended complaint nor otherwise responded to the Court's February 18, 2022 order. For the reasons discussed herein, it is recommended that Plaintiff's complaint be

1 dismissed for failure to state a cognizable claim, and this action be dismissed for failure to

2 comply with the Court's order, and failure to prosecute.

## II.

### SCREENING REQUIREMENT

5 Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

6 determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

7 relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

8 such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)

9 (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners);

10 Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis*

11 proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

12 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis*

13 complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998)

14 (affirming *sua sponte* dismissal for failure to state a claim). The Court exercised its discretion to

15 screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii)

16 fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

17 defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

18 In determining whether a complaint fails to state a claim, the Court uses the same

19 pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a

20 short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R.

21 Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the

22 elements of a cause of action, supported by mere conclusory statements, do not suffice."

23 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

24 544, 555 (2007)).

25 In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and

26 accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89,

27 94 (2007). Although a court must accept as true all factual allegations contained in a complaint,

28 a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A]

1    complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops

2    short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting

3    Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for

4    the court to draw the reasonable conclusion that the defendant is liable for the misconduct

5    alleged. Iqbal, 556 U.S. at 678.

**III.**

**COMPLAINT ALLEGATIONS**

8    The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of

9    the *sua sponte* screening requirement under 28 U.S.C. § 1915.

10   Plaintiff brings this action against Defendants J. Vista ("Vista"), Janet Ziadeh ("Ziadeh"),

11   Ka Moua ("Moua"), Kari Gilbert ("Gilbert"), Kerly Keokominh ("Keokominh"), Lisa Sprauge

12   ("Sprauge"), and Tiffany Brubeck ("Brubeck") (collectively "Defendants"), and proffers he is

13   suing these Defendants for violations of his right to be free from deprivation of life, liberty, or

14   property without due process and equal protection of the laws.  (Compl. 1-3,[1] ECF No. 1.)

15   Plaintiff alleges both federal question jurisdiction, and diversity jurisdiction.  (Id. at 3-4.)

16   Plaintiff submits the complaint under the First, Fourth, Fifth, Sixth, Seventh, Eighth, and

17   Fourteenth Amendments of the United States Constitution, as well as under 15 U.S.C. § 645, 18

18   U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 245, 18 U.S.C. § 1001, 18 U.S.C. § 1035, 18 U.S.C.

19   § 1341, 18 U.S.C. § 1346, 18 U.S.C. § 912, 18 U.S.C. § 1951, 18 U.S.C. § 1957, 18 U.S.C. §

20   1581, 18 U.S.C. § 1503, 18 U.S.C. § 1512, 31 U.S.C. § 3729, 19 U.S.C. § 1592, Civil Code §

21   1572, Penal Code § 529, 25 C.F.R. § 11.448, 31 U.S.C. § 3720D, 42 U.S.C. § 1994, 28 U.S.C. §

22   4101, 15 U.S.C. § 1692c, 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, 15 U.S.C. § 1692g, 15 U.S.C. §

23   1692h, 15 U.S.C. § 1692i, 15 U.S.C. § 1692j, 5 U.S.C. § 3331, 31 U.S.C. § 3720D, 42 U.S.C. §

24   1983, as well as bringing claims for intentional infliction of emotional distress, and negligence.

25   (Id. at 1-2.)  Plaintiff brings a total of twenty-three (23) individual counts for relief.  (Id.)

26   Plaintiff alleges that "Defendants conspired with Plaintiff's former employers, to subject

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
CM/ECF electronic court docketing system.

1  him to the unlawful practice of forcing him, as a condition of employment, to participate in and

2  enforce a program requirement work-performance contract through wage garnishments in

3  exchange for his labor, as a means of enrichment for the State Disbursement Unit, and repayment

4  of two [2] separate alleged accounts of debt without affording due process and equal protection

5  of the laws." (Id. at 3.)

6       Plaintiff worked for Aetna as a Health Concierge beginning approximately August 27,

7  2018. (Compl. 5.)  On or about September 24, 2018, Plaintiff, through his work email, was

8  provided two four-page documents entitled "INCOME WITHHOLDING FOR SUPPORT,"

9  dated September 1, 2018. (Id.)  The first document stated the total amount to withhold from his

10  paycheck was $413.00 per month, and the name of the Judge or issuing official was Defendant

11  Brubeck.  The second document stated the total amount to withhold was $150.00 per month, and

12  had the name of the Judge or issuing official as J. Vista.  Plaintiff alleges his wages were

13  garnished bi-weekly beginning in September of 2018, until his termination in November of 2019.

14  (Id.)

15       Plaintiff alleges he was evicted on September 30, 2019, because he could not afford his

16  living expenses as a result of the wages being withheld. (Id.)  On October 7, 2019, Plaintiff

17  provided a complaint to Aetna via email, wherein he described the harmful effects of the

18  garnishment, and "harassment from his immediate supervisor." (Id.)  On November 8, 2019,

19  Plaintiff was terminated from his employment. (Id.)

20       On January 30, 2020, Plaintiff issue a complaint to the Department of Child Support

21  Services. (Compl. 6.)  On January 21, 2020, the Department of Child Support Services Deputy

22  Direct Sprague and Director Gilbert replied via mail, stating the allegations do not meet the

23  requirement elements required to establish an investigation. (Id.)

24       On January 4, 2021, Plaintiff began working for Southwest Traders.  On January 15,

25  2021, Plaintiff suffered a lower back injury from slipping on black ice while working.  On

26  February 1, 2021, Plaintiff was provided via email with two additional wage withholding

27  documents in the amounts of $413.00 and $30.00 per month, respectively, one containing the

28  name of the Judge or issuing official as Defendant Moua, and the other with Defendant Ziadeh.

1  (Id.)

2      Plaintiff received a letter dated February 2, 2021, addressed the Zurich American

3  Insurance Company, stating the IWO requires a deduction of earnings.  (Compl. 7.)  Plaintiff

4  states that on February 15, 2021, he received an email from Thomas Zhou, a claims examiner,

5  stating a check would be mailed in the amount of $671.02, and he subsequently received a check

6  in the amount of $479.30.  On March 4, 2021, Plaintiff sent a complaint to the Department of

7  Child Support Services.  On March 9, 2021, Defendant Sprague replied via mail stating the

8  relevant balances owed did not pertain to a loan, but to a court ordered obligation to pay child

9  support. On March 25, 2021, Plaintiff resigned due to physical and financial injuries.

10      On July 27, 2021, Plaintiff began working for Drakaina Logistics as an Amazon delivery

11  partner.  Plaintiff received additional wage garnishment documents while in the presence of other

12  employees. (Compl. 7-8.)  The documents contained the names of the Judge or issuing official

13  as Defendants Keokominh and Ziadeh.  (Id.)  On September 7, 2021, Plaintiff provided Drakaina

14  Logistics with notice of possible violations of law relating to the garnishments. (Compl. 8.)  On

15  September 10, 2021, Plaintiff's wages were garnished, and on the same date, Plaintiff informed

16  Drakaina Logistics of a notice of intent to sue.  Plaintiff's wages were garnished again on

17  September 24, 2021.

18      On October 5, 2021, Plaintiff provided Defendants Keokominh and Ziadeh with a notice

19  demanding they cease and desist from seizing his property.  On October 8, 2021, Plaintiff's

20  wages were again garnished.  On that date, Plaintiff was terminated as a result of inquiring about

21  the possible violation of law and company policy. (Compl. 9.)  On October 11, 2021, Plaintiff

22  provided notice of his intent to sue Defendants Keokominh and Ziadeh.  On October 19, 2021,

23  Plaintiff provided Defendants Burbeck and Vista with a notice to return property, and on October

24  25, 2021, notified them of his intent to sue.

25      Plaintiff alleges that Defendants' program requirement "is enforced by a local Child

26  Support Enforcement [CSE] Agency, not a Court," that the program "does not contain a

27  signature by a judge of competent jurisdiction," and that Defendants "are child support

28  representatives impersonating a judicial officer with intent to defraud Plaintiff." (Compl. 9.)

**IV.**

**DISCUSSION**

After setting forth the specific factual allegations summarized above, Plaintiff then brings twenty-three (23) individual counts under the constitutional amendments, statutes and causes of action listed above.  These sections of the complaint essentially reproduce the text of the law verbatim, then generally state Defendants have violated these amendments or statutes by the actions describe above, by failing to rescind the contracts related to garnishment, and generally averring to violation of his rights of freedom of speech, right to petition the court, and rights to due process and equal protection of the laws.  Given the format of Plaintiff's complaint and the fact that he brings twenty-three (23) individual counts, the Court will not address every constitutional amendment and statute that the Plaintiff cites to in his complaint, however, the Court will address the most significant aspects of the complaint's factual and legal allegations.  For the reasons explained herein, Plaintiff has failed to state a cognizable claim for a violation of his federal rights in this action.  The Court recommends that the complaint, filed November 17, 2021, be dismissed for failure to state a claim, and this action be dismissed for failure to prosecute and for Plaintiff's failure to file an amended complaint as ordered to do so.

**A.      Rule 8**

As set forth above, Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.

A court may dismiss a complaint for failure to comply with Rule 8(a) if it is "verbose, confusing and conclusory."  Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981); Brosnahan v. Caliber Home Loans, Inc., 765 F. App'x 173, 174 (9th Cir. 2019).  Additionally, a court may dismiss a complaint for failure to comply with Rule 8(a) if it is "argumentative, prolix, replete with redundancy, and largely irrelevant."  McHenry v. Renne, 84 F.3d 1172, 1177 (9th

Cir. 1996).

The Court finds that Plaintiff's complaint violates Rule 8(a).  Plaintiff's complaint is not a short and plaint statement of his claims against the specific named Defendants, but rather his complaint's main body is 45 pages, and totals 99 pages with exhibits.  The allegations are confusing and unclear, making it difficult for the Court to determine what, if any, cognizable claims are included.  Although the Federal Rules employ a flexible pleading policy, Plaintiff must give fair notice to the Defendants and must allege facts that support the elements of the claim plainly and succinctly.  It is Plaintiff's duty to articulate his claims, not the Court's or the Defendants' duty to try to decipher what claims Plaintiff is asserting in the action.

The complaint alleges various issues related to child support and wage and earning withholding orders, contains several legal conclusions regarding the validity of those orders, and cites to a variety federal statutes and constitutional provisions.  However, it does not clearly state Plaintiff's federal claims and many of Plaintiff's conclusions regarding the validity of the state court orders lack factual support as to how his due process rights or other constitutional or statutory rights were violated, nor in what way they are "false" or "fraudulent," aside from generally averring a copy of the order did not have a valid signature, without citing to or alleging that this violates any form of California law or regulation applicable to the forms.  The requirement of a clear and plain statement of Plaintiff's claims is especially important in this case because this Court does not serve as an appellate court of state court decisions.  If Plaintiff wishes to challenge a decision from a state court regarding child support, he must pursue the appropriate procedures in state court (which may be subject to time limitations and other rules).

Plaintiff's complaint is an example of a shotgun pleading, repeatedly incorporating all preceding paragraphs by reference—which have been found to violate Rule 8.  See Weiland v. Palm Beach Cty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."); Deerpoint Grp., Inc. v. Agrigenix, LLC, 345 F. Supp. 3d 1207, 1234 n.15 (E.D. Cal. 2018) ("However,

incorporating literally all 143 preceding paragraphs, without specific reference to either disparagement or Paragraph 81, does not give Defendants (or the Court) fair notice of the factual bases of the IIPEA claim." (citing <u>Weiland</u>, 792 F.3d at 1321-23)).  In each of the twenty-three (23) separate counts against the three Defendants, Plaintiff does not sufficiently articulate his claims.  The complaint cites a variety of federal statutes and constitutional provisions, and while Plaintiff separately lists each claim, each offers only a "formulaic recitation" of Plaintiff's proffered cause of action.  <u>Twombly</u>, 550 U.S. at 555.

Further, to the extent that Plaintiff is alleging claims based in fraud, the pleading standard of Rule 9 would apply.  Allegations of fraud of subject to the pleading requirement of Rule 9 of the Federal Rules of Civil Procedure.  Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requires a plaintiff to plead with "more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and citations omitted).

Initially, Plaintiff's allegations are insufficient to plead fraud with particularity as required under Rule 9.

> To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.  A plaintiff might do less and still identify the statement complained of; indeed, the plaintiff might do less and still set forth some of the circumstances of the fraud.  But the plaintiff cannot do anything less and still comply with Rule 9(b)'s mandate to set forth with particularity those circumstances which constitute the fraud.

<u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

**B.  Jurisdiction**

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  <u>U.S. v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  Federal courts are presumptively without jurisdiction over civil actions, and the burden to establish the contrary rests upon the party asserting jurisdiction.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375,

1   377 (1994).   Generally, there are two bases for subject matter jurisdiction: federal question

2   jurisdiction and diversity jurisdiction.   28 U.S.C. §§ 1331, 1332.   Plaintiff alleges both federal

3   question jurisdiction, and diversity jurisdiction.

4        District courts have original jurisdiction of all civil actions between citizens of different

5   States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of

6   interest and costs."   28 U.S.C. § 1332(a).   This requires complete diversity of citizenship and the

7   presence "of a single plaintiff from the same State as a single defendant deprives the district

8   court of original diversity jurisdiction over the entire action."   Abrego Abrego v. The Dow

9   Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).   Here, Plaintiff alleges that

10  he is a citizen of California.   (Compl. 3.)   Plaintiff also alleges Defendants Vista and Brubeck are

11  also both citizens of California.   (Id.)   Since Plaintiff and at least two of the named defendants

12  are all alleged to be citizens of California, diversity of citizenship does not exist in this action.

13       Jurisdiction in this action must therefore be based on a federal question.   Pursuant to 28

14  U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the

15  Constitution, laws, or treaties of the United States.   "A case 'arises under' federal law either

16  where federal law creates the cause of action or where the vindication of a right under state law

17  necessarily turns on some construction of federal law."   Republican Party of Guam v. Gutierrez,

18  277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd.

19  v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)).   "[T]he

20  presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint

21  rule,' which provides that federal jurisdiction exists only when a federal question is presented on

22  the face of the plaintiff's properly pleaded complaint."   Republican Party of Guam, 277 F.3d at

23  1089 (citations omitted).

24       As to federal question jurisdiction, although the complaint cites to various federal statutes

25  and constitutional amendments, it is not clear, for the reasons given above, which, if any, of

26  these references are intended to allege a claim against the named Defendants and what the

27  factual bases of those claims may be.

28  / / /

1    **C.      The <u>Rooker-Feldman</u> Doctrine**

2        Under the <u>Rooker-Feldman</u> doctrine, a party may not seek appellate review in federal

3    court of a decision made by a state court.  <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923);

4    <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).   Typically, the <u>Rooker-Feldman</u>

5    doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in

6    which a party losing in state court seeks what in substance would be appellate review of the state

7    judgment in a United States district court, based on the losing party's claim that the state

8    judgment itself violates the losers' federal rights.  <u>Doe v. Mann</u>, 415 F.3d 1038, 1041-42 (9th

9    Cir. 2005); <u>see</u> <u>also</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)

10   (the <u>Rooker-Feldman</u> doctrine precludes a district court from appellate review of "cases brought

11   by state-court losers complaining of injuries caused by state-court judgments rendered before the

12   district court proceeding commenced[.]").  Accordingly, the district court lacks jurisdiction over

13   "claims . . . 'inextricably intertwined' with the state court's decision such that the adjudication of

14   the federal claims would undercut the state ruling." <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, 898

15   (9th Cir. 2003) (citing <u>Feldman</u>, 460 U.S. at 483, 485); <u>see, e.g.</u>, <u>Moore v. County of Butte</u>, 547

16   Fed. Appx. 826, 829 (9th Cir. 2013) (finding a plaintiff's claims challenging the outcome of

17   custody proceedings were properly dismissed); <u>Rucker v. County of Santa Clara, State of</u>

18   <u>California</u>, 2003 WL 21440151, at *2 (N.D. Cal. June 17, 2003) (finding the plaintiff's claims

19   were "inextricably intertwined" with the state court's rulings where the plaintiff "challenge[d]

20   his original child support order on jurisdictional grounds, dispute[d] his total child support

21   arrearages, and allege[d] that Santa Clara County's garnishment order against his disability

22   benefits payments is invalid"); <u>see also</u> <u>Ignacio v. Judges of U.S. Court of Appeals</u>, 453 F.3d

23   1160, 1165-66 (9th Cir. 2006) (affirming the district court's dismissal of the case "because the

24   complaint is nothing more than another attack on the California superior court's determination in

25   [the plaintiff's] domestic case").

26       To the extent Plaintiff is asking this Court to review the child support and wage and

27   garnishment orders issued by the state court, under the <u>Rooker-Feldman</u> doctrine, this Court

28   lacks jurisdiction to review and reverse a state court's decision.  Accordingly, any claim seeking

1    to reverse the state court orders cannot proceed in this Court.

2    **D.**    **Due Process**

3        "The Fourteenth Amendment's Due Process Clause protects persons against deprivations

4    of life, liberty, or property; and those who seek to invoke its procedural protection must establish

5    that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The due

6    process clause of the Fourteenth Amendment protects two distinct but related rights: procedural

7    due process and substantive due process.  Albright v. Oliver, 510 U.S. 266, 272 (1994).

8        The substantive protections of the due process clause bar certain governmental actions

9    regardless of the fairness of the procedures that are used to implement them.  Cty. of Sacramento

10   v. Lewis, 523 U.S. 833, 840 (1998).  Therefore, the substantive protections of the due process

11   clause are intended to prevent government officials from abusing their power or employing it as

12   an instrument of oppression.  Lewis, 523 U.S. at 846.  The Supreme Court has held that "the

13   substantive component of the Due Process Clause is violated by executive action only when it

14   'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' "

15   Id. at 847.  "[O]nly the most egregious official conduct can be said to be arbitrary in a

16   constitutional sense." Brittain v. Hansen, 451 F.3d 982, 990 (9th Cir. 2006) (quoting Lewis, 523

17   U.S. at 846).

18       "Substantive due process is ordinarily reserved for those rights that are 'fundamental.' "

19   Brittain, 451 F.3d at 990.  "The protections of substantive due process have for the most part

20   been accorded to matters relating to marriage, family, procreation, and the right to bodily

21   integrity[;] and the Supreme Court has been reluctant to expand the concept of substantive due

22   process.  Albright, 510 U.S. at 271-72.  To state a substantive due process claim, a plaintiff must

23   "show both a deprivation of [his] liberty and conscience shocking behavior by the government."

24   Brittain, 451 F.3d at 991.

25       "The requirements of procedural due process apply only to the deprivation of interests

26   encompassed by the Fourteenth Amendment's protection of liberty and property."  Bd. of

27   Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972).  "[P]rocedural due process

28   claims are resolved by balancing tests, where differing interests can give rise to many differing

procedural requirements." Brittain, 451 F.3d at 1000. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Plaintiff asserts vague and speculative deprivation, such as the effect of child support matters from his state case on employment garnishment. There are no facts alleged by which it could reasonably be inferred that Plaintiff is not receiving the process due in his state court case.

### E.  Equal Protection

Plaintiff alleges violations of his right to equal protection. There are two ways for a plaintiff to state an equal protection claim. A plaintiff can state a claim for violation of the Equal Protection Clause, by showing "that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003). Intentional in this context means that the defendant acted, at least in part, because of the plaintiff's membership in a protected class. Serrano, 345 F.3d at 1082. Alternately, the plaintiff can state a claim by alleging that he was intentionally treated differently than similarly situated individuals and there was no rational basis for the difference in treatment. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

There are no factual allegations that Plaintiff is a member of a protected class or that any named defendant acted with the intent or purpose to discriminate against him due to his membership in that class. Nor is there any allegation that Plaintiff was intentionally treated differently than other similarly situated individuals. Plaintiff has failed to state a claim for violations of the Equal Protection Clause.

### F.  Fourth Amendment

Plaintiff alleges a violation of the Fourth Amendment. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 528 (1967). "To establish

1    a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and

2    seizure as contemplated by the Fourth Amendment, but also that said search and seizure was

3    unreasonable and conducted without consent."   Rakas v. Illinois, 439 U.S. 128, 143 (1978);

4    United States v. Rubio, 727 F.2d 786, 796–97 (9th Cir. 1983).

5         There are no allegations in the complaint that Plaintiff was seized or that there was a

6    search such to implicate the Fourth Amendment.  Plaintiff has failed to state a claim for violation

7    of the Fourth Amendment.

8         **G.**     **Title 18 of the United States Code**

9         Plaintiff also alleges violations, among other statutes, of 18 U.S.C. §§ 242, and 245.

10   "[T]he fact that a federal statute has been violated and some person harmed does not

11   automatically give rise to a private cause of action in favor of that person."   Touche Ross & Co.

12   v. Redington, 442 U.S. 560, 568 (1979) (quoting Cannon v. University of Chicago, 441 U.S.

13   677, 688 (1979).  Rather, the court is to consider if Congress intended to create the private right

14   of action in the statute and begins with the language of the statute itself.   Touche Ross & Co.,

15   442 U.S. at 568.   "Civil causes of action ... do not generally lie under the criminal statutes

16   contained in Title 18 of the United States Code."   Del Elmer; Zachay v. Metzger, 967 F. Supp.

17   398, 403 (S.D. Cal. 1997).

18        Here, the sections cited under Title 18 provide for fines and incarceration for criminal

19   offenses and do not set forth a private cause of action nor is there any language that would imply

20   that a cause of action exists to allow Plaintiff to seek a remedy for these criminal statutes in this

21   action.

22        **H.**     **Judicial Immunity**

23        Absolute judicial immunity is afforded to judges for acts performed by the judge that

24   relate to the judicial process.   In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002), as amended

25   (Sept. 6, 2002).   "This immunity reflects the long-standing 'general principle of the highest

26   importance to the proper administration of justice that a judicial officer, in exercising the

27   authority vested in him, shall be free to act upon his own convictions, without apprehension of

28   personal consequences to himself.' "   Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th

1    Cir. 2004) (quoting <u>Bradley v. Fisher</u>, 13 Wall. 335, 347 (1871)).   This judicial immunity

2    insulates judges from suits brought under section 1983.   <u>Olsen</u>, 363 F.3d at 923.

3         Absolute judicial immunity insulates the judge from actions for damages due to judicial

4    acts taken within the jurisdiction of the judge's court.   <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1075

5    (9th Cir. 1986).   "Judicial immunity applies 'however erroneous the act may have been, and

6    however injurious in its consequences it may have proved to the plaintiff.' "   <u>Id.</u> (quoting

7    <u>Cleavinger v. Saxner</u>, 474 U.S. 193 (1985)).   However, a judge is not immune where he acts in

8    the clear absence of jurisdiction or for acts that are not judicial in nature.   <u>Ashelman</u>, 793 F.2d at

9    1075.   Judicial conduct falls within "clear absence of all jurisdiction," where the judge "acted

10   with clear lack of all subject matter jurisdiction."   <u>Stone v. Baum</u>, 409 F.Supp.2d 1164, 1174 (D.

11   Ariz. 2005).

12        To determine if an act is judicial in nature, the court considers whether (1) the precise act

13   is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy

14   centered around a case then pending before the judge; and (4) the events at issue arose directly

15   and immediately out of a confrontation with the judge in his or her official capacity.   <u>Duvall v.</u>

16   <u>Cty. of Kitsap</u>, 260 F.3d 1124, 1133 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11,

17   2001) (quoting <u>Meek v. County of Riverside</u>, 183 F.3d 962, 967 (9th Cir. 1999)).

18        Here, it appears Plaintiff is bringing suit against judicial officers for actions taken in their

19   judicial capacities over which they have jurisdiction.

20   **I.      Intentional Infliction of Emotional Distress and Negligence**

21        Plaintiff avers to state law claims of intentional infliction of emotional distress and

22   negligence.

23        The elements for a claim of intentional infliction of emotional distress under California

24   law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of

25   the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and

26   proximate causation of the emotional distress."   <u>Wong v. Tai Jing</u>, 189 Cal.App.4th 1354, 1376

27   (2010) (quoting <u>Agarwal v. Johnson</u>, 25 Cal.3d 932, 946 (1979)).   Conduct is "outrageous if it is

28   'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' "   <u>Simo</u>

1  v. Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002)

2  (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).  The emotional

3  distress must be "of such a substantial quantity or enduring quality that no reasonable man in a

4  civilized society should be expected to endure it."  Simo, 322 F.3d at 622.

5          Given the legal standards and facts discussed above, Plaintiff has not stated sufficient

6  facts pertaining to any named Defendant or unnamed individual that would rise to the level of

7  intentional infliction of emotional distress.  Even if Plaintiff was able to demonstrate intentional

8  infliction of emotional distress, the Court would also decline to exercise supplemental

9  jurisdiction over such state claim because Plaintiff failed to state a separate cognizable federal

10 claim, as explained above.  See Ward v. Webber, No. 118CV00916SABPC, 2018 WL 3615853,

11 at *3 (E.D. Cal. July 26, 2018) ("Because Plaintiff fails to state a cognizable federal claim, the

12 Court will not exercise supplemental jurisdiction over his state law [slander] claim, even if he

13 cures the deficiencies and states a claim.") (citing 28 U.S.C. § 1367(a); Herman Family

14 Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001)).

15                                            **V.**

16        **DISMISSAL FOR FAILURE TO COMPLY AND FAILURE TO PROSECUTE**

17         Plaintiff has failed to comply with the February 18, 2022 order granting him leave to file

18 an amended complaint.  A court may dismiss an action based on a party's failure to prosecute an

19 action, failure to obey a court order, or failure to comply with local rules.  See, e.g. Ghazali v.

20 Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik

21 v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an

22 order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988)

23 (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised

24 of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal

25 for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir.

26 1986) (dismissal for lack of prosecution and failure to comply with local rules).

27         "In determining whether to dismiss an action for lack of prosecution, the district court is

28 required to consider several factors: '(1) the public's interest in expeditious resolution of

1  litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants;

2  (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less

3  drastic sanctions.' "  Carey, 856 F.2d at 1440 (quoting Henderson v. Duncan, 779 F.2d 1421,

4  1423 (9th Cir. 1986)).  These factors guide a court in deciding what to do, and are not conditions

5  that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA) Products

6  Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

7      In this instance, the public's interest in expeditious resolution of the litigation and the

8  Court's need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine

9  (PPA) Products Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended

10  complaint within thirty (30) days of February 18, 2022.  Plaintiff has neither filed an amended

11  complaint nor otherwise responded to the Court's order.

12      Plaintiff's failure to comply with the orders of the Court hinders the Court's ability to

13  move this action towards disposition, and indicates that Plaintiff does not intend to diligently

14  litigate this action.

15      Since it appears that Plaintiff does not intend to litigate this action diligently there arises a

16  rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447,

17  1452-53 (9th Cir. 1994).  This risk of prejudice may be rebutted if Plaintiff offers an excuse for

18  the delay.  In re Eisen, 31 F.3d at 1453.  Plaintiff has not responded to the February 18, 2022

19  order so the risk of prejudice to the defendants also weighs in favor of dismissal.

20      The public policy in favor of deciding cases on their merits is outweighed by the factors

21  in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  This action can

22  proceed no further without Plaintiff's cooperation and compliance with the order at issue.  There

23  is no operative pleading that states a claim in this matter and the action cannot simply remain

24  idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh

25  Plaintiff's failure to comply with the Court's orders.

26      Finally, monetary sanctions are not available to induce compliance because Plaintiff is

27  proceeding in forma pauperis in this action.  Additionally, a court's warning to a party that their

28  failure to obey the court's order will result in dismissal satisfies the "consideration of

alternatives" requirement. <u>Ferdik</u>, 963 F.2d at 1262; <u>Malone</u>, 833 F.2d at 132-33; <u>Henderson</u>, 779 F.2d at 1424. On February 18, 2022, the Court specifically informed Plaintiff that his complaint did not satisfy Federal Rule of Civil Procedure 8's requirement to provide a short and plain statement of the claims made against each defendant; that the complaint was deficient in that it was vague and unclear as to each separate Defendant's actions; that it improperly makes legal conclusions by alleging a claim without connecting specific factual details to the types of alleged claims; and thus that it did not provide sufficient factual content for the Court to find any claim was plausible as presented. Plaintiff was specifically warned that the failure to file an amended complaint in compliance with the order would result in the recommendation that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and failure to state a claim. (ECF No. 12 at 16.)

Accordingly, the Court finds that the balance of the factors weighs in favor of dismissing this action for Plaintiff's failure to comply with the February 18, 2022 order, and failure to prosecute.

**VI.**

**CONCLUSION AND RECOMMENDATIONS**

Plaintiff has failed to state a cognizable claim for a violation of his federal rights in this action. Further, considering the factors to be evaluated in determining whether to dismiss this action for the failure to comply and failure to prosecute, the Court finds that the factors weigh in favor of dismissal of this action.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Plaintiff's complaint filed November 17, 2021 (ECF No. 1), be DISMISSED for failure to state a cognizable claim; and

2.    This matter be dismissed for Plaintiff's failure to comply with the Court's February 18, 2022 order (ECF No. 12), and failure to prosecute.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to this findings

and recommendations with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 31, 2022**

UNITED STATES MAGISTRATE JUDGE